IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ROBIN MICHELE WELLS** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 6:21cv392-KNM** |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The matter was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons below, the Commissioner's final decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits on October 23, 2018, alleging a disability onset date of August 19, 2017. The application was denied initially and on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing by telephone due to the COVID-19 pandemic. She issued an unfavorable decision on January 22, 2021. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review on August 10, 2021. Plaintiff then filed this lawsuit on October 6, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to

1

"determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).  A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)).  A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir.

1987).  If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985).  The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A).  A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process.  *Villa*, 895 F.2d 1022.  A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry.  *Id*.; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475).  Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity.  At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe.  At Step Three, the commissioner must determine whether the claimant has an impairment or

combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree

of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

## ALJ'S FINDINGS

The ALJ made the following findings in her January 22, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since August 19, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lupus anticoagulant syndrome, fibromyalgia, hypertension, headaches, irritable bowel syndrome (IBS), dysthymic disorder, somatic symptom disorder, depression, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally kneel, stoop, crouch, and crawl. She

    can never climb.  She can perform simple routine and repetitive work with few, if any, changes in a routine work setting.

6. The claimant is capable of performing past relevant as actually performed (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 19, 2017, through the date of this decision (20 CFR 404.1520(f).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

    Plaintiff testified at her hearing before the ALJ on January 6, 2021.  Plaintiff testified that the main reason she cannot work is due to pain and a lack of dependability.  Plaintiff explained that she has days when she cannot get out of bed due to pain and insomnia and she is so tired that she cannot keep her eyes open.  Plaintiff described flare ups occurring once every couple of months that can keep her in bed for a week. Her pain is primarily in her low back and legs.  She reported a constant dull pain with episodes of severe pain.  Plaintiff stated that she takes Tramadol and Tylenol for pain.  She testified that the Tramadol gives her relief from the severe pain, but she always has some pain.  Plaintiff stated that she additionally takes medications for lupus and fibromyalgia that cause drowsiness and she is currently managing her IBS without medication.

    Plaintiff estimated that she has headaches twice per week and she takes Tylenol to alleviate them.  She testified that she can only stand for ten minutes before needing to sit due to leg pain and sit for thirty minutes before needing to stand up due to back pain.  Laying down is most comfortable for her.  Plaintiff stated that she can lift a gallon of milk and a nine- or ten-pound bowling ball.  She said that she shops at the grocery store, but always uses a cart so she has something to hold onto if she gets too sore or dizzy.  Plaintiff stated that she can drive locally, but

has to make stops for longer drives, and she can perform household chores with breaks and modifications.

Plaintiff testified that Zoloft generally keeps her depression under control, but she described episodic events of anxiety and depression where she can't catch her breath. She stated that it does not occur very often and she has not had any therapy or counseling. She also stated, however, that her depression causes her to not want to do anything. Plaintiff explained that she was going through a more difficult time due to her adult daughter's cancer diagnosis. She described difficulty focusing and concentrating when reading, but she stated that she does not have social anxiety or difficulty getting along with people. Plaintiff testified that her condition remained pretty steady due to medication and her doctors have not placed any specific activity restrictions on her other than generally discussing a need to avoid strenuous exercise.

Plaintiff testified that her previous work included a job as a prison mail clerk. In that role, she rotated duties with co-workers removing packages from UPS and FedEx trucks, delivering mail and processing outgoing mail. Plaintiff was not sure how much weight she was required to lift to perform that job, but she estimated it was less than fifty pounds. She also worked for a tractor supply company as a cashier and stocker. Plaintiff stated that she worked in a call center late 2010 to May 2012. Plaintiff testified that she quit that job due to stressful quotas and an incident when she was in the emergency room due to an allergic reaction but her employer told her she would be fired if she did not show up for work. Plaintiff's other jobs included part-time and temporary work as a cashier and receptionist.

A vocational expert witness, John Yent, also testified at Plaintiff's hearing. Mr. Yent classified Plaintiff's past work to include: (1) mailroom clerk, DOT 209.687-026, light, SVP 2, unskilled (medium as performed); (2) mail censor, DOT 249.367-010, sedentary, SVP 5, skilled;

7

(3) telemarketer, DOT 299.357-014, sedentary, SVP 3, semi-skilled; (4) cashier stock clerk, DOT 299.367-014, heavy, SVP 4, semi-skilled (medium as performed); and (5) inspector packager, DOT 920.587-018, medium, SVP 2, unskilled (light as performed).

The ALJ presented a hypothetical individual of Plaintiff's age, education and work experience who can perform light work, occasionally kneel, stoop, crouch and crawl, never climb, can perform simple routine and repetitive work with few if any changes in a routine work setting. Mr. Yent testified that the hypothetical individual could perform Plaintiff's past work as an inspector packager as it was actually performed as light work.  He also stated that the hypothetical individual could perform Plaintiff's past work as a telemarketer because even though it is classified as SVP 3 by DOT, in his opinion, based on his experience, it is SVP 2 as actually performed.  Mr. Yent also identified the following jobs that would be available to the hypothetical individual up to age fifty-five: (1) cashier II, DOT 211.462-010, light, unskilled, SVP 2, with approximately 876,633 jobs in the national economy; (2) price marker, DOT 209.587-034, light, unskilled, SVP 2, with approximately 311,156 jobs in the national economy; and (3) housekeeping cleaner, DOT 323.687-014, light, unskilled, SVP 2, with approximately 133,343 jobs in the national economy.

The ALJ presented a second hypothetical with the same information except reduced to sedentary work.  Mr. Yent testified that the individual could perform Plaintiff's past work as a telemarketer.  If the hypothetical individual were to miss at least two days of work per month, however, no work would be available.

*Medical Record*

Plaintiff received primary care from Dawn Dansby, FNP, and Dr. Jon Edwards.  FNP Dansby saw Plaintiff on January 25, 2017 for a headache with dizziness and fatigue.  On examination her blood pressure was 142/98.  FNP Dansby gave Plaintiff Toradol and Phenergan

injections and ordered an MRI. Plaintiff returned on February 2, 2017. FNP Dansby noted that Plaintiff's headache resolved with blood pressure medication and likely stemmed from elevated blood pressure. Plaintiff reported improved IBS symptoms, but she returned four days later complaining of diarrhea. FNP Dansby prescribed Viberzi and referred Plaintiff for a colonoscopy. Plaintiff returned with a cough on February 13, 2017 but stated that her IBS and headaches were better. An MRI of the brain on March 27, 2017 showed a small lesion that Dr. Walker concluded was likely a small vascular abnormality.

Plaintiff went to the emergency room on April 1, 2017 with complaints of dizziness and headache. A head CT showed no evidence of an acute intracranial hemorrhage, midline shift or mass effect. There was a small lesion in the left thalamus with minimal increased density and low density center that was deemed a probable venous angioma. Plaintiff's neurological examination and electrocardiogram were normal.

A neurologist, Dr. Richard Tyer, examined Plaintiff on May 3, 2017. Dr. Tyer opined that Plaintiff's dizziness and headaches are caused by anxious depression that is worsened by nutritional deficiencies. Dr. Tyer explained that the AV malformation has been there since birth and is not causing her symptoms. Dr. Tyer recommended B12 injections and smoking cessation.

Plaintiff continued to report dizziness at her appointment with Dr. Edwards on May 25, 2017. Examinations were normal and Plaintiff had a blood pressure of 120/80. Dr. Edwards noted that there was no apparent cause of the dizziness. On June 13, 2017, Plaintiff reported improvement with Effexor. Dr. Edwards encouraged weight loss and opined that there were no physical concerns to keep Plaintiff from going to work. Plaintiff reported new dizziness symptoms on July 3, 2017. Dr. Edwards diagnosed vertigo and noted that Plaintiff was positive for nystagmus. Plaintiff returned a week later stating that she was supposed to return to work but

couldn't because of continued dizziness. Dr. Edwards opined that anxiety was a likely component of Plaintiff's dizziness. Dr. Edwards added sleep medication on July 24, 2017 and propranolol for tachycardia on August 1, 2017. FNP Dansby referred Plaintiff to rheumatology due to an abnormal ANA lab result.

A rheumatologist, Dr. Luis Vasquez, evaluated Plaintiff on August 29, 2017. Plaintiff's physical examination was normal and Dr. Vasquez concluded that despite her positive ANA, Plaintiff did not meet the criteria for lupus or an autoimmune disease. At a follow up a month later, Dr. Vasquez noted that labs demonstrated elevated SSA, SSB, RF, c3 and CRP, but his physical examination of Plaintiff was unremarkable for active autoimmune/inflammatory disease.

Plaintiff returned to Dr. Edwards on October 23, 2017 for depression. She complained of weight gain while taking Effexor and requested to switch to Zoloft.

At a rheumatology follow up on October 30, 2017, Plaintiff complained of bilateral leg pain and low back pain that she treats with OTC medication. She reported difficulty sitting for long periods of time and lifting heavy objects. Plaintiff also reported improvement while taking a steroid, but the pain returned when the steroid dose was tapered. Physical examination findings were normal. Dr. Vasquez opined that Plaintiff's widespread pain met the criteria for fibromyalgia and started her on hydroxychloroquine. On February 1, 2018, PAC Phillips noted improvement since starting hydroxychloroquine. PAC Phillips added tramadol for pain. There was no significant change at Plaintiff's follow up on November 7, 2018.

Plaintiff requested an increase in her Zoloft dosage on February 9, 2018. Plaintiff explained that she was burdened by physical and financial issues, the loss of a friend and her daughter's illness. FNP Dansby increased the dosage and requested a return visit in four weeks. The next entry is July 17, 2018. Plaintiff reported that the medication prescribed by rheumatology

controlled her dizziness and that Zoloft had her depression well controlled, but she also reported lack of energy, loss of interest and loss of pleasure in life.

On November 14, 2018, Plaintiff was admitted to the hospital with acute bronchitis. A chest X-Ray showed asthmatic bronchitis and an EKG showed no evidence of acute injury or ischemia. Plaintiff was discharged two days later.

Tina Lloyd Borke, Psy.D., completed a consultative mental status examination on February 20, 2019. Plaintiff reported low energy levels and difficulty with tasks such as getting out of bed, completing chores and coping. Plaintiff was cooperative and established rapport with Dr. Borke. She exhibited a normal rate and tone of speech with a concrete thought process. She did not exhibit any difficulty with thinking or have increased energy. Plaintiff denied suicidal or homicidal ideation and auditory or visual hallucinations. Plaintiff appeared anxious and depressed with a flat mood and minimal eye contact. Dr. Borke noted that Plaintiff's judgment was poor but her sensorium was good with average intellectual abilities and knowledge of the world. She had good remote memory. Plaintiff was able to correctly repeat three words back and seven numbers forward and backward, but she could not repeat 20% of a two-sentence story verbatim. Plaintiff could count backwards from 100 by 7 for three numbers, spell the word "world" backwards and accurately answer simplified mathematic and word problems read aloud. Her insight was good and she fully identified all of her deficits. Dr. Borke diagnosed major depressive disorder, recurrent, moderate, with a poor prognosis. Dr. Borke opined that Plaintiff would most likely have trouble with unstable moods, depression, lack of self-esteem, lack of motivation and lack of self-worth.

Plaintiff returned to PAC Phillips for a three-month follow up on March 5, 2019. Plaintiff reported alternating Tylenol, ibuprofen and tramadol for bilateral leg pain and back pain. PAC

Phillips started Plaintiff on Lyrica. At her next follow up on July 9, 2019, Plaintiff reported stopping Lyrica shortly after starting it due to drowsiness. PAC Phillips noted that Plaintiff was doing well on hydroxychloroquine and tramadol.

Suzanne Chapman Reams, Psy.D., performed a consultative mental status examination on October 10, 2019. Plaintiff reported insomnia, difficulty completing physical tasks and crying due to stress. Plaintiff had good eye contact, a depressed mood, an appropriate attitude and goal directed thought processes. She denied suicidal or homicidal ideation and delusions or obsessions. She also denied visual or auditory hallucinations. Plaintiff rated her mood a 5 out of 10. She identified the date, day of the week and current president but could not state something going on in the news. Remote memory appeared intact with the ability to identify her age and date of birth, as well as three presidents. Plaintiff was able to remember seven out of seven digits forward, reversing two, and six out of seven backwards with three in the correct order. Plaintiff could remember four words after five minutes, correctly alternate between letters and numbers for ten out of ten series, generate a grocery list, subtract threes from twenty and subtract sevens from one hundred for three out of five series. She exhibited sound judgment and insight.

Dr. Reams diagnosed somatic symptom disorder with predominant pain, persistent, severe, and major depressive disorder, recurrent, severe with anxious distress, severe. Dr. Reams opined that Plaintiff's prognosis is extremely guarded and that, due to her physical and psychological symptoms, it is highly unlikely that she would be able to sustain meaningful employment at this time. Dr. Reams concluded that Plaintiff would benefit from counseling.

The rheumatology clinic gave Plaintiff a Depo-Medrol injection on October 17, 2019. At a return visit on January 30, 2020, she reported that it helped her pain and she was more energetic. Plaintiff stopped taking NSAIDS and Tylenol due to decreased renal function. On April 27, 2020,

Plaintiff reported continued back and gluteal pain.  FNP Whatley noted that Plaintiff responded well to Savella.  On July 10, 2020, Plaintiff stated that she has a constant dull ache but she opined that the current treatment is helping and she does not hurt as bad when she takes her medication.  FNP Meyer noted that Plaintiff remained stable overall but was having difficulty due to the recent loss of her mother.

During the application process, State agency consultants reviewed the records and completed assessments.  Ryan Hammond, Psy.D., reviewed the record and determined that Plaintiff did not meet or equal a listing for a mental impairment.  He further opined that Plaintiff's alleged mental limitations are partially supported by the medical evidence but they do not impose more than a non-severe impact on functioning.  Lee Wallace, Ph.D., confirmed the finding of a non-severe mental impairment on November 26, 2019.

Dr. Betty Santiago reviewed the record and completed a physical residual functional capacity assessment on March 25, 2019.  Dr. Santiago concluded that Plaintiff is able to perform medium work.  On reconsideration, Dr. James Wright opined that Plaintiff does not have a severe impairment.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff presents one issue for review: whether the ALJ failed to fully account for her fibromyalgia.  Plaintiff submits that the ALJ found fibromyalgia to be a severe impairment but failed to include appropriate fibromyalgia limitations in the residual functional capacity ("RFC").  More specifically, Plaintiff asserts that the ALJ failed to address "the unpredictable nature of autoimmune disease flares that leave her bedridden for extended periods of time that would naturally result in her being 'off task' and unable to perform work on a regular and

consistent basis."[1] Plaintiff further argues that the ALJ did not fully consider the limiting effects of stress and pain. Plaintiff submits that pain limits her ability to perform activities of daily living, keeps her in bed for a week at a time during flares, and makes her unable to commit to a regular schedule. She also asserts that depression affects her ability to maintain a regular schedule and stress triggers her fibromyalgia flares. Plaintiff points to medical records documenting her reports of pain, lack of energy and dizziness. Plaintiff argues that the ALJ's finding that the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record is not supported by substantial evidence. Finally, Plaintiff asserts that the ALJ failed to consider her work history, showing a demonstrated willingness to work, when assessing her credibility.

In response, the Commissioner asserts that the ALJ properly considered the evidence, including all evidence relating to Plaintiff's fibromyalgia, when determining that she retains the RFC to perform light, unskilled work. The Commissioner points to the ALJ's consideration of normal physical and mental examination findings, conservative treatment, and activities of daily living that support the RFC finding. The Commissioner submits that the ALJ properly evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms and provided ample reasoning for finding that her statements are not entirely consistent with the record. The Commissioner contends that the objective evidence in the record shows that, despite leg and back pain, Plaintiff retained a steady gait, full muscle strength in her extremities, full range of motion and intact sensation. The Commissioner asserts that she also repeatedly reported improvement with medication, maintained normal speech and communication and demonstrated no difficulty with thinking, attention, or concentration during her mental status examination. The

---

[1] Plaintiff Robin Michele Wells' Brief, ECF 16, at *4.

Commissioner submits that the ALJ properly considered all the evidence, including the abnormal findings and Plaintiff's symptoms, and concluded that Plaintiff is limited to a reduced range of light work.

It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

The ALJ reviewed the medical evidence, together with Plaintiff's reported symptoms, and concluded that her medically determinable impairments could reasonably be expected to cause the alleged symptoms. She further determined, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical and other evidence in the record. The ALJ found that Plaintiff's functional ability is greater than alleged.

To explain that finding, the ALJ summarized the medical evidence, including evidence of headaches, elevated blood pressure, an abnormal brain MRI, an abnormal arthritis profile, emotional distress, dysthymic disorder, irritable bowel syndrome, complaints of fatigue, insomnia, pain, dizziness and dry mouth, and diagnoses of lupus anticoagulant syndrome, fibromyalgia and major depressive disorder. The ALJ also summarized medical evidence showing a lack of muscle

weakness, myalgia, neck stiffness or rheumatological manifestations, improvement with medication, stability and pain relief on medication, normal appearance and communication, normal physical, neurological and mental status examinations, and intact memory and insight.

Turning to the medical opinions and prior administrative findings, the ALJ determined that the State agency medical consultant opinions finding no severe impairment were not persuasive because the evidence shows severe impairments with functional limitations. Similarly, the ALJ did not find the State agency psychological medical consultant opinions persuasive because the evidence supports a finding of a severe impairment. The ALJ concluded that Dr. Borke and Dr. Ream's opinions were partially persuasive and not persuasive, respectively, because neither consultant provided a full functional assessment.

Plaintiff asserts that the ALJ did not fully consider the impact of her fibromyalgia pain. In determining whether pain is disabling, the courts give deference to the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1384–85 (5th Cir. 1988). The Commissioner, as opposed to the Court, is the fact finder and the Commissioner may determine the credibility of witnesses and medical evidence. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

It is well settled that pain in and of itself may be disabling. *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Not all pain, however, is disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). To rise to the level of disabling, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1991). The ALJ must consider subjective evidence of pain, but it must be corroborated by objective medical evidence and it is within the ALJ's discretion to determine the pain's disabling nature. *Wren v.*

*Sullivan*, 925 F.2d 123, 128–29 (5th Cir. 1991); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). A claimant's testimony of pain and limitations, standing alone, is insufficient to establish disability. *See* 42 U.S.C. § 432(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive of disability."). "At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged." *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (citing *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)).

The Fifth Circuit has not adopted a rigid approach requiring an ALJ to follow formulaic rules when articulating the credibility analysis. *Falco v. Shalala*, 27 F.3d at 164. Here, the ALJ adequately articulated her reasons for finding that Plaintiff's subjective complaints of pain and resulting asserted limitations are not fully consistent with the medical evidence. The ALJ specifically referenced normal examinations, activities of daily living and positive response to medication. She expressly determined that Plaintiff's lifting and carrying should be reduced to the light work level due to her overall pain. The ALJ additionally recognized that activity aggravates her condition despite the relief provided by medication, further supporting a limit of light work. "The ALJ found the medical evidence more persuasive than the claimant's own testimony. These are precisely the kinds of determinations that the ALJ is best positioned to make." *Id*. There is substantial evidence supporting the ALJ's finding that Plaintiff's pain does not preclude the ability to complete a normal workday at the light exertional level.

For all these reasons, the ALJ's RFC finding is supported by substantial evidence. The ALJ's decision reveals that she sufficiently considered Plaintiff's symptoms, the objective medical record and opinion evidence. She cited specific evidence to support her opinions. Plaintiff has not shown that the ALJ failed to apply the correct legal standards or that the RFC assessment is

not supported by the record.  The Commissioner's decision should be affirmed and the complaint should be dismissed.  It is therefore

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

So ORDERED and SIGNED this 30th day of August, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE